All rise. It's on the roll of public court. 3rd Judicial District of Illinois is now in session. You may be seated. 312-0063, People of the State of Illinois, Appalachia-Chandray v. $47,980.00 United States Currency et al., Appellant Melissa Matuszek. Ms. Matuszek? Good morning. Good morning. May it please the court and counsel, my name is Melissa Matuszek and I represent the claimant appellant in this case, Lance Wright. This is a drug asset forfeiture case. The case was commenced when the state filed a complaint seeking a forfeiture of approximately $48,000.00. I believe it's $47,980.00 that was seized from a vehicle that was owned by the claimant, Mr. Wright. But at the time of the seizure it was being driven by two gentlemen, one named Mr. Valencia and the other Mr. Rodriguez. Mr. Wright filed a claim for the money and the trial court held a hearing and the trial court found that the state had met its burden of showing probable cause to believe that the money was used in connection with illegal drug activity and he ordered forfeiture of the money. It is our position and it's the sole issue that we've raised in this appeal that the trial court's finding is against the manifest way of the evidence that was presented in this case, that it was unreasonable and not based on any actual evidence or any inferences that could be raised from the evidence in this case. The testimony at the hearing was that Mr. Valencia and Mr. Rodriguez were driving a car, they were heading westbound on I-80. An officer initiated a traffic stop and during that traffic stop, and it's unclear from the record why a narcotics officer showed up with a drug dog, but apparently at some point during the stop the dog alerted on the exterior of the car. Who was driving the car? Well, that was a question at the hearing. It appears that it was Mr. Rodriguez. He was the person who had a driver's license and it was in his name that the traffic violation was actually issued. Oh, because it said it was issued to Mr. Valencia. And I don't recall if the ticket itself is in the record, but I believe that there was some testimony where the patrol officer did concede that he was mistaken, that it was Mr. Rodriguez who was driving, Mr. Valencia was the passenger of the car. Thank you. Thank you. The citation was issued for following too closely behind another vehicle. During the, oh, I'm sorry, Mr. Valencia, he conceded or consented to a search of the vehicle. The police seized the cash, wrote the ticket, released the vehicle to Mr. Valencia and Mr. Rodriguez and sent them on their way. And as I said, at the forfeiture hearing the court found that the state had met its burden of showing probable cause to believe that this money was, in fact, used in connection with drug dealing activities. And to do that, the court had to find that based on the totality of the evidence presented, that there was more than a mere suspicion that there was drug activity connected to this money. And this court has been very clear about that standard, that it must be more than mere suspicion, that that is not sufficient. There has to be some connection to drug dealing activities. The money, I mean, what about the circumstantial evidence, the way the money was wrapped? You had four cell phones. The money was wrapped in rubber bands, which in and of itself is not indicative of drug activity. I'm talking about the evidence as a whole. You've got wrapped up money in little bundles. You've got four cell phones. You've got a dog hitting on, you know, the area. And the state relied on three pieces of evidence. The cell phones, I believe the testimony was that there was no connection. There was no evidence found on those phones. There was no connection to any drug dealing activities. They were just there. I mean, all they have are the cell phones. They had cell phones. They had cell phones. They had four cell phones and a camera. But there was nothing in particular found on those phones. The drug dog alert was interesting in that the patrol officer who performed the traffic stop wrote in his report and testified that the dog alerted on the car. When the dog handler testified, he said that he had no recollection of the alert at all. And he was relying solely on the fact that it was written in the other officer's report. And again, you know, the alert was apparently just an alert on the exterior of the vehicle. There was no evidence that when the search was performed on the interior of the vehicle, whether the dog was even let into the vehicle, if it ever alerted again or didn't. The record is void of any of that evidence. The second piece of evidence that the state relied on was the encounter at the motel. When Mr. Valencia and Mr. Rodriguez arrived in New York, the testimony was that they gave the car to some unnamed person who left for 45 minutes and came back. And that was the end of that story. There was no additional evidence who that person was. There was no follow-up. Mr. Valencia and Mr. Rodriguez both contend that they had no idea there was money in the car. They had no information about any drugs ever being put in the car, taken out of the car. They claim they had no knowledge of any of that. I mean, the reason I was asking about the circumstantial evidence, you find drugs in the car, you have bundles of money. You've got two people who don't know anything about anybody or anything. I'm sorry, Steve, you find drugs in the car? I mean, you've got money in the car. I mean, you've got the dog smelling something, and there's conflict about that, as you say. Correct. Yeah, I didn't mean that there were drugs, per se, in the car. But you've got the dog smelling something. Alerting on something. And again, the testimony was that the state has no way of knowing what that something was. Because nothing like that was found. Nothing. There were no drugs found. There was not even drug residue. There was no trace. There was no indicia of drug dealing activities. There were no drug wrappers. There were no hidden compartments in the car. There was no weapons. Nothing on the money. Nothing on the money. There was nothing to indicate that there were ever any drugs in the car, that the police actually recovered from that search. What the state relied on primarily was Mr. Valencia's statement to the police that he was in the process of purchasing a vehicle from someone named Raul, but that he hadn't started paying for the car yet, and he hoped that he would receive the car in exchange for driving across the country. And Valencia was asked if he himself had any involvement in drug activity, in transporting drugs across the country, and he said no. The officer who interviewed Valencia testified that when he asked, does Raul have, is he involved in drug trafficking to the East Coast, the testimony was that Mr. Valencia nodded in a way that led the officer to believe that Raul was involved in drug trafficking. Now that's pretty nebulous there. And, you know, the state's position that the police could not do any follow-up because they only had Raul's first name is not correct. The record is clear that Mr. Valencia provided Raul's name, his nickname, his phone number, the city that he lived in, and the name of his business. And I believe it was Officer Clark who testified that he in fact called the police in the city, he said where Mr. Valencia and Raul were from, and he obtained no additional information. So, I guess... I'm curious, what is Mr. Wright's connection to the mobile? Well... I know he objected... Yes. ...to the claim. What's his claim based on? Because he's not connected to the car. He is connected to the car. Actually, the car was then, and was at the time of the hearing, titled to, I believe it's called Dealer's Fleet. It was Mr. Wright owns... Car Dealer's Fleet, I hope. He owns... Yes, exactly. Yes, thank you for clarifying. Car Dealer's Fleet. Mr. Wright owns an auto car dealership of sorts. I don't know the specifics of his dealership, but that car was titled to Mr. Wright, and he was the owner of the car. Is he in the business? It was an open title. What did that mean? It was an open title. It means that... That the dealership... It appears that it means that the car had not been signed over to anyone, that the dealership was in the process of signing it over to someone, but... Whoever that was. Whoever that was, that was unclear. Did he claim the money? Excuse me? He claimed the money? He did. He did. He didn't testify, though. He did not. He was present, but he did not testify. And it's, of course, our position that... He doesn't have to. He doesn't have to, but the state did not... If we ignore the dog sniff, which really produced nothing, because of the conflict in the officer's testimony, I think we can even assume it didn't occur. It would be logical. It wouldn't be a stretch to imagine it didn't occur and somebody was mistaken. You still have the admission by Valencia that this was a very short trip, east to west, stayed one day, gave the car to somebody else for a few minutes, and $20,000 appeared in the car on the way home. They didn't know anything about it, but there it is. Isn't that enough for probable cause? Well, it's a very low standard. Well, I would first say that there was no evidence that that money was not in the car the entire time. Valencia and Rodriguez said they had no idea that the money was in the car. Not that they didn't know it was in the car on the way back, just that they never knew that it was in the car. Secondly, the short trip and giving the car to someone, it's possible that they were transporting something completely legal. Expensive jewelry or, I'm sorry? But they didn't say. But they didn't, and I cannot, I would be speculating to try to figure out why they wouldn't know what it was that they were doing. But, and we can see, it does look suspicious. It does look suspicious, but there is, other than just pure speculation, there is no evidence of drug dealing. And if this Raul person was, in fact, involved in drug trafficking, the police had ample opportunity to make some connection between Raul, the car, the money, and drugs. And they failed to do so. And, you know, I believe that the state's own brief sort of sums it up. It just says, obviously, Valencia drove the BMW from California to New York where he handled the vehicle for a short period of time in which drugs could be removed and replaced by cash. That is the only logical explanation for why he would make that trip. And I would say that that's not the only logical explanation. And it is simply not sufficient. Counsel has two minutes. Other than the questionable alert by the dog, was there any evidence that there had been drugs in the car? No, Your Honor. None. At all. Not a trace, not a seed of nothing. And the police, you know, they had no idea what kind of drugs they were even speculating were in the car. In fact, they don't know. The state's position was that this money was either the proceeds of a drug deal that happened in New York or there was a previous drug deal and this was a partial payment from that drug deal. The theory was not even consistent or supported by any evidence. And the computation with regard to the money appeared to be based on an assumption that they were dealing with cocaine. They were talking about the street value of cocaine. Is that not accurate? Well, the patrol officer who actually stopped the vehicle and issued the ticket also testified as an expert. And he testified as to the street value of cocaine and the street value of marijuana. So, again, there was no... It was just sort of general, you know, this money could be used to buy drugs. This money could be the proceeds of these two different kinds of drugs. He also testified about the drug commerce on the highway. He did. He did. And what states they were coming from and what locations within a state. Correct. And I think he focused primarily on the southwestern border near Mexico and this trip originated... It was further north. Yeah, it was in northern California, I believe, to Ithaca, New York. If there are no further questions, I would... Is there any evidence that only drug dealers drive on I-80? No, there is no evidence that only drug dealers drive on I-80. I drove on I-80 myself this morning, so... Well, somebody needs to arrest you. I hope not. Thank you. Ms. Chowdhury? Good morning. May it please the Court, counsel? For the present issue, the people argue that the trial judge's finding of probable cause for the evidence of the money was not against the manifest weight of the evidence. It is the totality of the circumstances that leads to finding a probable cause, and factors to be weighed in the totality of the circumstances analysis are, number one, is a positive alert of the drug sniffing dog. And in the present case, Sergeant Tullen, who was declared an expert by the trial judge, observed the canine alert on the exterior of the... I think it's Thulin. Thulin, thank you. It's hard to know. Thank you. Sergeant Thulin was declared an expert by the trial judge, and he observed the canine alert on the exterior of the BMW. And the defendant did argue that no drugs were found in the vehicle. However, Sergeant Thulin... Thulin, is that correct? Thulin. Thulin, thank you. Thulin. Testified on many prior occasions, he observed canine alert after it was discovered that a large amount of narcotics had been recently removed from a suspect vehicle. And then also, moreover, in this case, the people offered other evidence to demonstrate probable cause and did not just rely on the presumption to establish the nexus between the currency and the illicit drug activity. And then furthermore, close proximity of the drugs to money is not required forfeiture, not relying on the presumption. Doesn't the probable cause have to be related to this particular defendant? Well, it's related to the money itself, the individual's circumstances surrounding the entire event. Doesn't it have to be related then to the specific incident? Sure. Okay. So how many times dogs have alerted in the past on cars really isn't relevant to the probable cause in this case. Is that correct? Well, I mean, it's one of the circumstances that factor into the totality of the circumstances that the charges relied on to determine that there was probable cause. I'm sorry. He determined that there was probable cause in this case because dogs had alerted in the past? No. I mean, based on the sergeant's testimony, he was declared an expert, and he said that it was common for dogs to alert, regardless of if there was drugs found or not, just based on the fact that there was drugs present at one time or another in the vehicle. Okay. And also, I think the defendant did mention that the sergeant was the only one who testified regarding the dog-sipping alert. Again, I mean, he was established as a credible witness by the trial judge, and that is enough to go off of. And Officer McFalls testified he did not recall. That does not negate the fact that the alert actually did, in fact, happen. Second factor that the courts look at. But the alert happened, and there were no drugs found. So the alert, to me, shows nothing. But I understand your position. I mean, based on the sergeant's testimony. If we ignore the drug alert, what else is there to arise to probable cause? The second factor that the courts look at is the individual's inconsistent or false explanations about the source of the money. And both Valencia and Rodriguez stated that the money found in the BMW was not theirs, and they also did not give any further information about the money or where it came from or how it got there or anything of that nature. Another factor that the courts look at is the originating and destination cities of travel. And Valencia and Rodriguez traveled to Ithaca, New York, from California, and only stayed one night at a hotel. And at the hotel, a meeting was arranged by an individual that Valencia refused to name. And at the hotel, Valencia then gave the keys to this individual. The individual took the BMW and returned approximately 45 minutes later with the BMW. And then at that point, Valencia and Rodriguez left New York shortly after receiving the keys. And another factor is that Valencia was traveling westbound on I-80 with a large sum of money when it was found. And I-80 is classified as two of the seven major drug corridors in the U.S. And another factor that the courts look at is inconsistencies in the individual's responses when asked about his or her travel and the timing of the purchase of tickets. And Rodriguez stated that he accompanied Valencia on this trip to assist with driving and to look for employment opportunities. However, he only went to one restaurant. And Valencia stated he took the trip because he hoped that Raul would give him the BMW in exchange for the trip to New York. And Valencia again stated he was afraid for his safety and would not give the name of the individual who sent him to New York or the name of the individual he met in New York. And if the money was from a legitimate source,  And also the people established probable cause believe that the property was connected to the drug activity. The dog sniff alert, even though it was on the exterior of the vehicle, and the money bundling provided the nexus between the currency and the illegal drug activity. And the people believe that the trial judge made the correct decision. People respectfully request that the trial judge's order be affirmed. Does the amount of the money have any bearing on probable cause? If it was $20 in the armrest, is that a different scenario than $20,000? Does that have any bearing, do you think, on the analysis by the trial judge? I don't think necessarily it has any bearing, but the sergeant and the officers did testify that the type of money and how it was bundled up and how it was found is related to drug interdiction. Because we don't want to develop a rule that allows the officers to stop cars, and they might find $20 in my vehicle today that I misplaced. Sure, but I think it was the way the money was bundled and concealed in the vehicle, and then the further evidence that established that. I'm not certain if you can answer my question, but if we reverse the trial court, find there was a probable cause to seize this money, what happens to the money? Has Mr. Wright demonstrated that it belongs to him? You're saying that the trial judge's order? What happens to the money? Does it automatically go to Mr. Wright? I guess at that point, if it's not being forfeited, then Mr. Wright is claiming ownership of that money. On what basis? I'm not quite certain. I think in one of the briefs it mentioned that he is the owner of this vehicle. Are you saying where the source of the money came from? I have no idea how they're claiming where this money came from. No, I'm curious. A follow-up to that question is, what was their basis for saying it was their money? Just because of the open title from the dealership that he owned? I'm sorry, whose thing? The one who wants the money. He says that he owns a dealership, and this car was an open title from that dealership. And since the dealership had the vehicle, and he owns the dealership, he gets the money. That's what they're going on. Because we don't want to develop a rule, either, that people make a living out of making claims on seized money, either. There's an open title here. I'm just trying to analyze both sides of the issue and what our decision might mean down the road as well. Regarding ownership of the vehicle. The two occupants of the car say it's abandoned money. We had no idea there was $20,000 in there. So I don't know what happens to the money if there is no probable cause. Is it treated as a lost property and held for two years? I don't know. I just wondered if you had thought that through. Sure, regarding ownership. That is a good question. Thank you. Was anybody charged with anything? I think tickets were issued to the individuals who were driving the actual vehicle. Were there any drug charges? No, there were no drugs found in the vehicle. Your probable cause didn't extend to thinking that maybe somebody had done a drug deal? I mean, that someone in the vehicle did the drug deal? Yeah. Was there anybody who was prosecuted in conjunction with this other than the traffic violation? I think they tried to get a clear understanding of what occurred to the officers in this case. But as Valencia and Rodriguez stated to both of the officers and the detective, that they had no idea what occurred. They didn't know what they were doing. They had no idea why they went to New York or what they were doing there, who they met, who they gave the car to. I mean, they just claimed that they had no idea what was going on. Other than checking out the cell phones, no investigation was done? I think the investigation was done, but nothing turned up. Nothing significant turned up. What investigation was done? I think they tried to look at the actual cell phones and the records, but I'm not quite sure. I don't want to say something without looking at the record. I'm sorry. Well, it was clear that they looked at the cell phones, but it was not clear that they did anything else. I think they did the best that they could with the information they were provided, and the defendant didn't bring anything else up in the lower court to refute the evidence or to bring forth the individual named Raul or his connection to this case. The $47,000 didn't bring anything up. Who's...? Okay. To follow up on, again, Justice Wright's question, from the hypothetical possibilities of different remedies, before us is a case dealing with whether or not there's a proper forfeiture. So if it was determined to be a proper forfeiture, then that's the end of the story. If it's determined not to be a proper forfeiture, then the question is, is there a default position where it automatically goes to the person who claims it, or is there something different? I mean, there is evidence that this was abandoned by the two drivers. So if there's, hypothetically, a want of showing that there was a forfeiture, there is no law that says it automatically goes one way or the other because the person makes a claim, does it? Not that I'm aware of, no. Regarding ownership of the actual money, where the money was actually found, not that I'm aware of. But I'm sure that there was some understanding of ownership and proof of ownership... Of ownership of the vehicle. Correct. But nobody knows how the money got there. No one in the vehicle claimed they didn't... Realize there was money in the vehicle. I mean, in evidence in this case, nobody testified. Nobody presented evidence. No one showed anything about where the money came from. That's correct. Except for circumstantial evidence that it was from a drug deal. That's correct. That's my understanding of the facts. And it's whether or not that's a probable cause for this hearing. Correct. So you're not aware of any case law dealing with this anomaly, this middle, this other, third position? Not offhand, but I'm sure... If I was given an opportunity, I'm sure I can find something. And I'm sorry, but maybe it's not fair to ask you that question because the question presented to us is whether this is a proper forfeiture. Sure. No, I understand that. I understand that it's relevant. But there are a number of possibilities depending on what we do. You've done a nice job of handling questions you could not possibly have anticipated. Thank you. Thank you, I appreciate it. Okay, you know what we're going to ask you. What happens if we agree with you that this could have been proceeds from a bank robbery and not a drug transaction? Well, I would... Does Mr. Wright have to show that these are not ill-gotten gains? Well, Mr. Wright did file a claim. On what basis? Well, he listed various sources of the money. He did not provide an explanation, nor do I believe he was required to provide an explanation as to why he had the money in that car. But he did, in his claim, provide various sources connected to his business, connected to his auto business. If it's an open title, as Justice Carter believes, then is it his car any longer? I mean, that's a felony offense just to have the open title. I believe it is still his car. I know that he was still in possession of the car at the time of this hearing, but I have not done any research. Okay, the car was returned to him by the state police? The car was returned to him, presumably, by Mr. Valencia or Mr. Rodriguez. Didn't they drive the car away? They drove the car away. The only citation was a traffic citation for following too close. There were... The car was released to them immediately, and they were free to go. And so if it was... I would suggest that if there was evidence of drug dealing, I would imagine that the state would move to seize the car as well, but they did not do that. If I could just address the issue of Mr. Valencia being afraid to give any information... Can I ask one quick question before you do that? And that is, again, a follow-up to the question, and that is, there is no law that I'm aware of, and are you aware of any law saying there's a default position with regard to ownership in these kinds of cases? I mean, what's discussed in the briefs, and I'm not trying to ask an unfair question to either one of you, but what's discussed in the briefs is the burden on a forfeiture, which is a probable cause burden. And so you've got that. We know what the law is on that. If it's determined there is a probable cause, then there's a shifting of the burden of persuasion to your client to show the nexus between the money and that, to show that, well, the probable cause on the forfeiture is negated because look at this paper chain to show this is how the money got there. Of course, we had none of that in this trial. What we have is a claim, allegations made, and a hearing about probable cause, and then a rule. Correct. Nothing else. I mean, there is a claim and there are statements in the claim, but nothing else. So I'm not aware of a default position with regard to this. No, as I understand the law, it is unclear. There is no default position that as long as there is a valid claim on the money and there is no finding of probable cause to seize the money, that it would be returned to the person who has made the claim. That's the kicker, the valid claim. Right. But it does make some sense because if there is no probable cause to seize, then but for the seizure, it would be still in the car, Valencia and Rodriguez. It's not as if they said that's my money and I want to keep it and someone is coming out of nowhere. They admit they had no claim to the money. If we go back to property law concepts, this is a treasure trove. I agree. But I don't know that I can adequately answer your question. The law requires that there be reasonable grounds to believe there's a nexus between this money and drug activity. Correct. What do you believe defeats that reasonable nexus that the court found? Well, the court, I mean, was it reasonable for the court to draw this conclusion that based on the circumstances of the trip and Raul, whose last name wasn't provided, where does it derail in your mind? Well, I don't think it was reasonable because the trial court found the ruling was that the whole thing to me is that there's probable cause that they took a load, dropped it off, somebody picked up the car, dropped it off, took the load out, replaced it with the money, and that they were driving back. I mean, that is a very specific finding. And it is completely unsupported by the record. There is no evidence that there was ever any kind of load. And the state, even at the hearing, can see that they don't know if there was a load. Maybe it was they picked up money from a prior drug deal. Maybe it was a drug deal in New York. And there is just no evidence to support that finding. And I know that the trial court gave a lot of weight to the Raul issue and that Mr. Valencia was afraid. And I think it's very important to address that because, again, it doesn't really make sense. If Mr. Valencia is afraid to provide information about who sent him on this trip, but he said that Raul gave him the car and he was going to sell him the car, he expected to be given the car, hoped to be given the car, for performing this trip, I think it's reasonable to say, well, Mr. Valencia is saying Raul sent him on the trip. He provided Raul's name, phone number, place of business. He was clearly not afraid to give information about the person who sent him on the trip. And that combined with the lack of any drug evidence in the car. What did they find out about Raul? I'm sorry? What did they find out about that guy? Apparently nothing. The testimony was that the officer called the police in the town where Raul lived and got no information. About the person? I'm sorry? About the alleged person? About this person named Raul. And, again, it's not just a name and a phone number, but it's also a place of business. It appears that was never followed up on. You can finish your answer. I would just say that the police, again, the police had plenty of information, ample opportunity to make some connection between drug dealing and this money. And there was just no credible evidence that this money was connected to any kind of drug dealing activity. And so we would respectfully request that this court reverse the trial court and vacate the order of forfeiture. You did a nice job. You both did a nice job today. Thank you very much for your time. Thank you. We will take the matter under advisement and render a decision without undue delay. And for now we're going to stand in a brief recess for a panel change. Board, it's now recess.